The Fourth District's Bill of Order of the State of Illinois has reconvened. The Honorable James A. Kinnett is presiding. You may be seated. This is our next case of the afternoon. Lakeshore Recycling versus the Illinois Pollution Control Board. That's 4241422. Would the appellant introduce her name, introduce herself, please. Thank you. And the appellees. Claire Meyer for American Disposal Services, doing business with public services. Who's talking? Who's speaking over here? I'm also Christina Hampton on behalf of the Illinois Pollution Control Board. Have you divided your time? OK, you may proceed. Good afternoon, Your Honors, Counsel for Respondents. My name is Sarah Chamberlain, and I represent Petitioner Henson Disposal, LLC, who is substituted for the original petitioner, Lakeshore Recycling Systems, LLC. This is a case about properly interpreting the notice language of Illinois' Local Sighting Review Statute to give effect to the plain language, intent, and purpose of the statute. Are Your Honors sufficiently familiar with the facts of the case, or would a brief summary be helpful? Your choice. We prepare. I'm sure you do. I'll also offer a brief summary, and if it's too much, then ask me to just move on. Henson Disposal, like original petitioner LRS, seeks to develop a waste transfer station in McLean County. Under the Illinois Environmental Protection Act, an owner or operator of a new pollution control facility, like a waste transfer station, must seek local sighting review and approval. The procedures governing that review process are set forth in the statute, in Section 39.2. With respect to notice, the law requires, in relevant parts, that an applicant serve written notice on, quote, the owners of all property within 250 feet in each direction of the lot line of the subject property. Said owners being such persons or entities which appear from the authentic tax records of the county in which the facility is to be located. This notice must be served at least 14 days before the applicant submits an application. There's no dispute here that LRS, the original petitioner, served notice on all property owners within 250 feet, and in some cases as far out as 500 feet from the lot line of the 3.09 acre property proposed as the site of the waste transfer station. Following a public hearing, McLean County Board approved the application for local sighting review. Respondent Republic appealed, and Respondent Illinois Pollution Control Board reversed on the issue of notice. Specifically, the Pollution Control Board interpreted the local sighting review statute as requiring that the notice distance be measured from the boundaries of a larger 30 acre tax parcel, as opposed to the surveyed and recorded lot lines of the 3 acre property that were described in the petitioner's application as the waste transfer facility. In the court, today we would ask the courts to reverse the decision of the Illinois Pollution Control Board and reinstate the decision of the county board for two reasons. First, the local sighting review statute, section 39.2, does not require applicants to use the county's authentic tax records to identify the lot lines of the subject property. The statute, in fact, directs that tax records are to be used for identifying who those owners are, who the owners of the surrounding properties are. Second, the local sighting review statute does not prohibit an applicant from defining the subject property itself. Under the statute, the subject property is the area proposed by the applicant to be used for waste management purposes. Counsel, you say that it doesn't say that the tax records have to be used to define the lot lines, it doesn't prohibit the defendant here to define their own lot, but it doesn't specifically allow that, is that correct? It doesn't specifically allow, what the statute says is you have to provide notice to surrounding property owners. It doesn't allow you to define what the property is, where the facility will be for purposes of notice, specifically. Well, it says that you should use the subject property, which in the context of the statute itself, the statute itself is directed to sighting approval for pollution control facilities, so in the context of the statute as a whole, it should be understood to be the subject property is the one for which you're requesting sighting for, which would be the waste transfer facility itself. So in a sense, the requester is deciding what the property is by making that application stating this is the property, it's sort of circular. Correct, so in the application you set forth what area you're proposing to use for the facility, and then after you know what that area is, then you provide notice based on the lot line of where that area is going to be located. What does the pollution board, I mean, what's the public policy behind it? Is there a fear that the site will expand into the remainder, or I don't like, you know, sometimes people will say in regard to the constitution, well that's just a technical objection. I don't know what a technical objection is. The objection is the pollution control board said you needed to give notice to more people. And you're saying, well, we don't, that isn't really the way it ought to work. Well respectfully, your honor, it's actually a statutory language, so it's not a regulation that the pollution control board has promulgated, so it's the statutory language. We're saying the statutory language says that you're not required to give notice outside of that 250 foot area. And part of that is that, you know, the statute is prescribing the requirements for the applicants, and so it shouldn't be read in a way that creates new conditions or new requirements that aren't in the statute itself. So it's your position the statute is not ambiguous at all? I think the plain language of the statute is clear that you do not need to record the lot lines of the property, and you can decide the subject property, and that would be our initial contention is yes, so the plain language is evident that that is the case, and that's how it should be interpreted. So with respect to the first point, that section 39.2 doesn't require applicants to use the county's authentic tax records for purposes of identifying the lot lines of the subject property. The statute's reference to authentic tax records rather instructs in how to identify the said owners of the surrounding properties. And that's clear from the grammatical structure, the plain language of the statute itself, where it's found in the statute, and the reference for the authentic tax records is indeed part of the definition of who is a said owner, and that's consistent with how Illinois courts have previously interpreted that language. So for instance, in two of the cases that were discussed in the briefing, Wabash and Bishop, authentic tax records in both of those cases were understood to be part of the definition of who is an owner and who is entitled to notice. In Wabash, the court said, owners are defined as those persons or entities appearing from the authentic tax records of the county. And again in Bishop, the court said that the statute requires that applicants for location approval use the authentic tax records to determine the owners to whom notice should be sent. Later, the court noted that the act defined owners as those appearing from the authentic tax records. The reference was not addressed to the location of the subject property. And the court in Bishop again also said, you know, we can't read section 39.2B as requiring more of the applicant than what's statutorily mandated. And that's our issue with the interpretation of the Pollution Control Board, is that it is creating new requirements that's going beyond what the statute is actually requiring of applicants. Can you repeat that? I'm sorry. What was the authority for that proposition? The language that I just stated? It was Bishop. Yeah. Thank you. You're welcome. And again, there's also practical policy-related reasons behind the legislature's choice to confine the use of authentic tax records to identifying the surrounding owners. So property ownership, it's subject to frequent change, and legal ownership can sometimes be difficult to determine, and that was actually the case in Bishop. There was a question as to which record to use. And in directing applicants to use, to identify surrounding property owners through the use of authentic tax records, it gives applicants a definitive source of information to look for. And just to be clear, surrounding property owners aren't the ones that brought up the  Yeah, that's correct, Your Honor. One of your rivals brought up the objection. Responder Republic was the one who filed the initial report. So modular home residences or whatever, there's reference in the record to what else is around there. None of these people objected, or if they did, they objected before the county board, not before the, they didn't bring this objection. Well, no, there was a public hearing that was held before the county and there was public notice in terms of publication notice that was provided in the newspaper, and also to local representatives, to state representatives, so there was notice that was provided more generally if people had objections they wanted to raise. So not to be cynical, but if your rival hadn't brought this up, we wouldn't be here. That's a definite possibility. That's just curiosity. Sure. In contrast, as opposed to getting, applicants and others don't necessarily need to know the specific, or by reference to authentic tax records, the specific location of the property. It has to be known already in the application, in the public notices, the location of that property is well defined, and it doesn't provide any additional certainty to members of the public to have it recorded in the tax records. That location is specific, and the siting that's granted is specific to the location that's identified in the notice, identified in the application. There's not a concern that that location will move. If I go to my county clerk after it occurs, after it happens, can I look that up and figure out where that site is and how it was promulgated? You can in some instances. Here you could because the petitioner did record it in the county tax records. You could also identify the lot lines using other methods. For instance, here they also used a legal survey, and they also created a separate legal definition, so you could take that legal definition and cross-reference it with the county records as well. You made reference to the difficulty in tracking property records because it can be sold or identified or whatever, but you had to know who owned this property, or you couldn't be planning to build on it. We did indeed, and we knew the surrounding property owners. That's because we had identified exactly. We knew where our property was going to be located, so then we could take our location of our property and look around using authentic tax records to see who was located around. That's exactly what we did, and all of those owners were notified. Those from that three-acre spot where we defined the site, they were all given notice. What else is in the three acres? The 3.09 acres, that's solely the spot that's intended to be used for the waste transfer station. What else is outside that 3.09? What's in the rest of it? Outside of that, there's the Henson Disposal Campus. There are concrete operations. There's other industrial activities. There's other businesses that are outside. I will note that there are no residences within that 250 area. In fact, no residence even outside of a 1,000-foot area of the reference three-acre site. If we interpret the statute in the way that you argue, if an applicant owns a large enough piece of property and they want to put a facility such as this in the center of it, then no one gets notice. That's not really true. There may be less personal notice that's provided and served. However, the statute does require that other notice be provided in terms of publication notice in the paper to everyone, local officials, state officials. Additionally, that 250-foot distance was intended to be a buffer and to show to those who might be directly affected who are closest to the actual waste management operations to provide them notice in case there are issues with odor or noise. Providing it in the middle of a bigger property is actually helpful because it's providing that insulation for property owners that are around there. In terms of measuring the notice distance, the language used by the legislature was a lot line, not parcel line, not recorded lot line, not tax parcel. A lot is simply a division of land with fixed or measured boundaries. Those fixed and measured boundaries can be measured in a variety of different ways by a legal survey, using a legal description, by subdivision. There are multiple different ways of doing it. Recording it in the assessor's office is not the only way. And it's not the way that is directed to be done in the statute. It's not required to be done that way. In some cases, so some of the cases that were discussed in the briefing, the only point of reference identified by the applicant, those were the tax records or the tax lines, or the applicant chose to define the subject property using the entire tax parcel. That's a different circumstance than what we have today. In those cases, they asked for siting over that entire tax parcel area. That's not what we've asked to do. We've defined the area as a smaller area and given notice based on that smaller area. So that's different from the case in, for instance, ECS in Madison County. Those were different cases. In providing notice, the statute only requires applicants to use authentic tax records to identify owners within 250 feet of the lot lines. And that requirement should, is part of, there is no requirement to record the lot lines in the authentic tax records. Moving on to how to define the subject property. Under section 39.2B, the subject property is the area identified by the applicant as the pollution control facility. The statute does not prohibit an applicant from defining the area that he wants to have cited. And in fact, that's the whole purpose of the statute itself, is to have the applicant define what area they intend to use as a pollution control facility, and then have the county review that area and make determinations as to whether that's a suitable area or not. So in this case, we have a redefinition of the area that was applied to. A redefinition by the Illinois Pollution Control Board, correct. And that's inconsistent with what, the request that was made. And that's actually problematic in a couple of different ways, for policy reasons, because, you know, it creates confusion as to what area is actually being cited. If we're changing the definition of which area is subject to citing, then at the end of the day we say, well, which area can you build the pollution control facility on? The smaller area, the bigger area, we're not sure. It also destroys certainty in terms of where to give notice for in the beginning. If we say it's this three acre property, but someone says it's 30 acres, there's no way you can decide how to give notice to people because you're redefining it after the fact. It's also inconsistent with the statute itself, that if the purpose of the statute is to set the area you want to develop, it doesn't make sense to say, hey, this larger area is where you're going to develop the property. It just doesn't match with the reality of the situation. And then given, as part of, as I previously discussed, as part of the citing review process, the applicant must necessarily identify the property he wants to use. It does that through the lot lines, identifying the lot lines of the subject property. And given this context, the statute's language, when it refers to subject property, must be understood to mean the property for which the citing application is being, or citing approval is being requested. So it must mean the area that is being proposed for use as a waste transfer facility. And the Inland Pollution Control Board's holding that the applicants cannot define the subject property is also inconsistent with past precedents by that board as well. So, for instance, in Land and Lakes that was described in the briefing, the board did not find that the applicant could not define the area that was a subject property. In fact, the board did the opposite. They went and they looked at the area that was defined by the applicant as a subject area, as a subject property, and they used that for purposes of determining notice and the area that was to be cited. And in that case, they also found that the 250-foot notice was to be computed only from that portion of the property that was to be used for the purposes of the waste transfer, of the waste management operation. But in that case, it was a landfill, not a waste transfer facility, but we're talking about the same thing, a pollution control facility. The exact name of that case was Land? That was Land and Lakes. Thank you. Here, the subject property is the three-acre site identified by the petitioner in its application and its notices as the area sought to be cited and to be used as the waste transfer facility. The Pollution Control Board's interpretation of the subject property as being the 30-acre tax parcel, it ignores the context and the purposes of the statute, and it creates a fiction that just doesn't match reality here. The plain language and intent of the statute is clear. The subject property is limited to the area proposed and identified by the applicant for use as a pollution control facility. Here, subject property was that three-acre site, and all property owners within 250 feet of the lot lines of that site were given notice. The petitioner met its notice obligations, and the McLean County Board had jurisdiction to approve the petitioner's application here. And for these reasons, the petitioner respectfully requests that the court reverse the decision of the board. And I'll reserve my remaining time for rebuttal. Thank you. Appellees. Good afternoon. Very briefly, my name is Taylor Kasha. I'm here for respondents of the McLean County Board in McLean County, Illinois. I just wanted something really simple to say really fast. Obviously, the McLean County respondents have been involved with this since it was initiated as we were the citing authority that granted the application for LRS initially. That approval of that application was based upon the interpretation at that time of the subject property being the 3.09-acre area. So that approval was based upon the pre-filing notice requirements of Section 39.2b for that area. That being said, as indicated in our brief as well, we will comply with the interpretation that this court puts forth after this. We just wanted to make sure that we were here to speak, and if there were any questions for us, that we were able to answer those. Otherwise, we will. We're indicating you think you were right, but if you weren't, you'll happily salute and do what the court says. We are indicating that we believe, based on the interpretation at the time, it was the proper interpretation, but if that is not this court's holding, we will gladly comply with whatever the interpretation is. Thank you. Thank you. Great argument. Good afternoon, and may it please the court. My name is Claire Meyer, and I'm here on behalf of Respondent American Disposal Services doing business as Republic Services. The microphone records, but it doesn't amplify. Okay. So you don't need to lean into it. All right. So I'm here today to request that this court affirm the Illinois Pollution Control Board's opinion vacating the conditional site approval to LRS for the operation of a new waste transfer site. So like LRS presented, the issue today is whether LRS provided sufficient statutory notice pursuant to Section 39.2b of the Illinois Environmental Protection Act. We believe that LRS failed to provide sufficient notice under Section 39.2b based on the following. One, the appropriate boundaries for determining who was entitled to notice were those owners shown in the authentic tax records of the county, not some unfinalized proposed boundary. And two, the Moore trustees, the owners of the property directly across from the original parcel, were not provided with notice. When determining who is provided notice under Section 39.2b, the correct boundary for determining the measuring purposes is the lot line as determined by the authentic tax records of the county. At the time that the notices were sent out and the application was submitted, the parcel in question did not exist. Let me ask a question. You represent a rival company, is that correct? That is correct. And what do you do in other counties or wherever you have sites? We operate a rival... No, no, I mean what do you do in terms of siting and notice and property records? I'm unsure what exactly that we do. I believe that we would follow the statutory guidelines and provide notice to those that have accurately defined their lot line pursuant to the statute. Which would be the tax records? Yes, according to the authentic tax records of the county. So was this objection filed because you're good citizens or because it's a rival? That's just, I mean, real world enters into this. We have statutory authority to file a petition for review of McLean County's decision pursuant to statute. That's a very diplomatic answer, thank you. So at the time that the notices were sent out and the application was submitted, the parcel in question was not in existence. Although there was a plot of survey filed and a preliminary plan approved, there was not yet any new parcels that had come into existence from the separation of the original parcel. The documents that were filed merely signaled LRS's intent to further subdivide the parcel. As held in Environmental Control Systems v. Long, a 5th District Appellate Court case from 1992, the language of the statute requires notification of owners of land within 250 feet of the lot line. The record reflects that the lot lines at issue are detailed on the authentic tax records and assessor's map. The court then went on to state that the statute calls for notification to owners of land within 250 feet of the lot line, not 250 feet from some other point within the lot lines. They then concluded that the greater parcel, not the smaller parcel, was the correct line for determining notice. How is that square with Ms. Chamberlain pointing out a decision of the Illinois Pollution Control Board, which counsel asked the name of and I don't remember the name, but at any rate she said past precedent by the Pollution Control Board. Yes, do you agree that there was such an earlier ruling? Can I just clarify, was that Land and Lakes that she had said? Yes. So I have a quote from Land and Lakes here that says, the subject property for notice purposes is the property or properties as legally recorded that encompass the Regional Pollution Control Facility. I do not believe that the language pointed out by LRS was completely relevant to the case at issue because in that case I believe the parcel was in the authentic tax records at the time the notices were sent out. And this property then subject to this case or the facility location had not yet been recorded in any fashion as a separate parcel that was taxed. So the current issue that we're talking about? Yes. At the time that notice was required? Yes, notice was required to be sent out 14 days before the application was submitted. So that would have been August 4th. On August 4th, the parcel where the new waste transfer site was supposed to be located was not yet in existence. What was later recorded? According to the conditional siting approval that granted LRS, the conditional site approval by the McLean County Board, a final plat of the property still needed to be recorded. So without the existence of the parcel, LRS could not themselves define or decide what the subject property is and instead must look to the authentic tax records to determine who to send notice to. Because LRS didn't send notice to the Moore trustees, who were the owners of the mobile home park directly across the road of the original parcel, we believe that the McLean County Board did not have such statutory authority to grant LRS conditional siting approval. And because of that, we would request that this court affirm the order of the Pollution Control Board, which vacated the approval of LRS's application for a new waste transfer facility. Counsel, do you know of any authority that states at what point it's determined how the parcel is determined? Is there any authority to say when and who says what this parcel is that's going forward on the application? I'm not sure if we know... What's the point in which we look at the application parcel, because there's this argument that it wasn't officially done by your opponents at a certain period of time. What authority do we have when it has to be determined? Does that make sense? Yeah, we would say that, I don't know if there's any case law that's directly on point to that, but we would say that it becomes a lot line for purposes of notice when the final plot of subdivision is recorded. That is all. Thank you. Thank you. Good afternoon. May it please the court. Counsel Christina Hanson on behalf of the Illinois Pollution Control Board. I'm going to pick up where co-respondent's counsel left off and say that the statute specifically defines when the property becomes a lot. It references the authentic tax records, and that is set by the Illinois Pollution Control Board. By each county, and the testimony here, the county acknowledged that there was no legally established lot in this case. Indeed, it was a condition of their siting approval that the preliminary plan of subdivision, which had been approved in February of 2023, but was never finalized. It wasn't always preliminary at the time that the property was... At the time that notice was given here, and even throughout the siting hearing, the application hearing, it was always preliminary, and the county itself made it a condition that it would have to be finalized. So there was no...  That was for this county siting approval, yes. The county recognized that there was no legally established lot line. Another department of the county had recognized that the application itself was confusing, because it suggested that a lot existed where there legally was not a lot. If we go to the plain language of the statute, it specifically requires that notice be served on owners of all property within 250 feet in each direction of the lot line of the subject property, set owners being those persons or entities which appear from the authentic tax records of the county. The only way to determine who the owners of the property within that notice radius is, is to look at the authentic tax records of the county to determine where the legal lot lines are, and then who are the owners of the property that need to be served. It seems to me it has to be established first, is it the 30 acres or is it the 9 acres? Because we don't know where to give notice to until we know what the lot is. And that is exactly why the applicant is to look to the authentic tax records, because those are records that are available, that are publicly available, that can be definitive boundaries of what the lot lines are. And that is entirely consistent with the way that the board has handled these applications. Based upon the size of the lot, the people to be given notice could be different. So the way that the statute is written, you have to look at the lot line as determined by the authentic tax records. And so if like LRS, the applicant owns a larger parcel, like a 100 acre parcel, that has not been legally divided into smaller lots, then you would look at the boundary of the entire parcel. And that is the Environmental Control Systems case, in which this court considered and recognized that the board had appropriately resolved the issue, because in that case, like here, the applicant had circumscribed a portion of its lot, a smaller portion that it called the facility parcel, and measured the notice radius from that smaller portion. And the board said that you have to look at the authentic tax records of the county to determine what the lot lines are. And because that smaller portion had never had established lot lines, was not a legally recognized lot, you had to look at the bigger parcel lot line and calculate the notice radius from there. If the owner of the 30 acre parcel had sought to divide it the way that subdivisions are divided, would there have been obstacles to them doing that? No, they would be entitled to subdivide their property. And indeed in the Land and Lakes Administrative Decision that LRS cites, that is exactly what happened. The applicant had a large parcel of land that it had divided into three smaller lot A, lot B, and lot C. And the first thing that the board did was determine that lots A, B, and C, all three were legally subdivided such that they could be deemed lots with lot lines under section 39.2B. And then the board looked at where the facility was cited, what was the subject property, and determined that the entire facility site was located on lot A. And so for purposes of notice, that legally recognized lot A was the lot line of the subject property from which the notice radius could be calculated. The situation here is very different because LRS did not establish the 3.09 acre parcel that they sought to cite. They had started the process of dividing it, but they had never divided, there was no legal lot line for that particular 3.09 acre parcel because they had not legally created that parcel. They had, again, taken steps through the preliminary plan of subdivision, but their own surveyor acknowledged that that is not a final division of the property. So in the authentic tax records of McLean County, the legal lot line of the subject property was the original parcel. But what you would concede, had they done that, had they divided, and it got divided in such a way that they could cite this on one of the lots that had been described, they would be giving notice to exactly the same people that they gave notice to. That they gave notice to here, yes. Had the 3.09 acre parcel been a legally established lot, meaning that it exists in the authentic county tax records, then yes, they could have measured the notice radius from that legally existing parcel. But again, that is not the case here. That is not what happened here. Here, the only legally recognized lot line was that of the original parcel, which bordered Bunn Street and just across Bunn Street was a residential mobile home development that did not receive notice. The notice requirements of 39.2b are jurisdictional. They must be strictly complied with. So whoever raised the notice issue, the fact remains that it is a jurisdictional requirement and it deprived the county of jurisdiction to issue the citing approval that it issued here. So the county misinterpreted or failed to correctly interpret the statute? The county decision appears to rely on the preliminary plan of subdivision, which was never made final. The testimony in this case, the McLean County Treasurer testified that the smaller 3.09-acre parcel did not exist at all in 2023. The original parcel was the assessed and taxed parcel for 2023, and that was retired at the end of 2023, December 31, 2023, and the new parcel would become a parcel starting in 2024. Likewise, the GIS specialist from the Supervisor of Assessments Office testified that that office received a change request form to record the subdivision of the properties. On August 17, the mapping was done on August 21, and it was not reflected in the county's database, the data tracking system that's used for tax purposes until January of 2024. And so at the time that notice was required, the parcel that they're seeking to measure the notice radius from simply did not exist. And LRS has suggested that the board is reading requirements into the statute or creating obligations, but that's not the case here. What we have here is a notice statute. All that is required under the statute is that an applicant give notice using the authentic tax records to all owners of property within the notice radius or 250 feet of the lot line of the subject property. If LRS, again here there was a residential property across Bund Street, LRS could have chosen to give notice or it could have divided its property. But if it did so, it had to legally divide its property at the time it was giving notice. And that makes sense that the legislature would do it that way because it's balancing competing interests between recognizing that these types of facilities are necessary, but also recognizing that they do have an impact on surrounding property owners who are entitled to notice and to be able to appear at a public hearing and voice their concerns. But that, unless there are further questions, I see that my time is up. Seeing no questions, thank you. Thank you. Rebuttal. All right. As expected, the respondents want to focus on the parcel lines and the tax parcels and what constitutes an official tax record. And that's at the heart of the issue. That is the problem here. The statute doesn't state that a party must define its lot lines according to the tax parcels, according to the authentic tax records, according to official subdivision records. Additionally, I want to correct one issue in the record, which was a statement made by county officials in terms of recordation. They actually did note that the meaning of the term lots, they did not say a lot has to be legally subdivided to be a lot. They were talking in terms of parcels, in terms of tax parcels. Lots are simply divisions of land with fixed or measured boundaries. They don't require a PIN number. They don't require identification in the tax records themselves. And that individual even noted during the hearing that a tax parcel can consist of multiple different lots, which are defined separately from the tax parcel. So a large tax parcel can have other separate lots within that one tax parcel. Additionally, I just wanted to address the question about, that was raised on ECS and Long, the fact that in those cases, the only lot lines that were available and the only lot lines that were identified by the applicant were tax parcel lines. So the context of that decision by the board was different, because in that case, yes, they said they wanted to site the entire area, they wanted to use the entire area, but then they tried to give notice based on a smaller area. That's different. That's not what's happening here. We're saying the only area we're requesting to be sited, the only area we're providing notice is based on that smaller area. As far as whether the parcel existed, it doesn't matter whether a parcel existed. The lot lines, they did exist, both at the time notice was given. Notice was served within 14 days, and the lot lines that were also recorded, although not required, were recorded with the county in terms of a legal survey, which identified the lot lines of that property were recorded with the county as well. So there was no changing those lot lines. They weren't subject to being moved. In terms of the issue on legal subdivision, there are obstacles to official legal subdivision. Those would create new obstacles for applicants that are simply not required in the statute, and that's another reason why the pollution and control board should not be given deference here in terms of its review, because when you create new requirements that are not present in the statute, that's an area where you don't get deference in your interpretation of the statute. As far as the statement made about the county saying that there was no identifiable lot, the health department noted that it was confusing whether or not, if there was a parcel located, but again, that's not a requirement in the statute that a specific parcel be recorded in the tax documents. And to make that clear, as well as a condition to the siting approval, we also agreed to formally complete the subdivision process and to see that through just in case there was any concern about where that position would be located. And for these and all of the foregoing reasons we discussed before, we ask that this court reverse the decision of the pollution control board and reinstate the decision of McLean County. Thank you. Thank you for your argument. We'll take this matter under advisement and we'll recess.